```
                    United States District Court
                       District of Massachusetts
_____
                              )
SAYADA JESMIN ARA,            )
        Plaintiff,            )
                              )
        v.                    )    Civil Action No.
                              )    09-11065-NMG
TEDESCHI FOOD SHOPS, INC. d/b/a )
STORE 24,                     )
        Defendant.            )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

Plaintiff Sayada Jesmin Ara ("Ara") brings this action against Tedeschi Food Shops, Inc. ("Tedeschi") for unlawful employment discrimination on the basis of race, color, religious creed and/or national origin, pursuant to Mass. Gen. Laws ch. 151B, § 4 and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), and for constructive discharge.

I. Factual Background

The following facts are as alleged in the plaintiff's first amended complaint. Ara is a Muslim woman whose national origin is Bangladesh. Tedeschi is a Massachusetts corporation which manages a chain of convenience stores. Ara has worked for Tedeschi since September, 1996 at various Store 24 convenience stores. At some point during her employment, she was promoted to Certified Assistant Manager. In October or November of 2006, Ara requested two religious holidays off from work which the Store

-1-

Manager, James Aronson, refused to grant her. Around the same time, Aronson allegedly showed Ara a picture of Sadaam Hussein after he was killed and told her "your leader is finished." On another occasion, he told her that he read that Bangladesh was the number one terrorist country. In February, 2007, Aronson denied Ara's request for unpaid leave to visit a sick relative in Bangladesh and told her that she would be terminated if she took the leave.

The plaintiff alleges that, in May, 2007, Aronson asked if a job applicant's name sounded Muslim and, when she said "yes", he threw the application in the trash. That same month, Ara's request to transfer to a store closer to her home was ignored. Also that same month, when Ara told Aronson that she could not work with pork products for religious reasons, he replied, "[F...ing] Muslims, I'm going to fire you." When Ara complained to Barbara Greenwood, the Division Manager, Greenwood allegedly asked Ara why so many Muslims abuse alcohol.

In May or June of 2007, Aronson reviewed Ara's job performance as "below average" and Tedeschi demoted her to part-time cashier, terminated her health insurance coverage and disability benefits, reduced her pay, hours and vacation time, and denied her other employee benefits. Ara claims that, since then, Tedeschi has hired a full-time cashier and two Assistant Managers who are Caucasian and Christian while continuing to deny

Ara full-time work.  She also alleges that Tedeschi did not give Ara the required COBRA notice about her health insurance termination and rights, resulting in a gap in her family's health insurance coverage.

In August, 2007, Ara filed a discrimination charge with the Massachusetts Commission Against Discrimination ("MCAD").  Ara continued to work reduced hours with no pay increases and was transferred from store to store.  At about that time, Tedeschi also fired her husband, Mohammed Gani, who had worked for Tedeschi for years.  In December of 2007, Ara filed a second complaint with MCAD in which she claimed that Tedeschi's treatment of her was discriminatory and in retaliation for her filing the first MCAD complaint.  Contemporaneously, Ara was transferred to Store 29, where she worked for the last 18 months of her employment.  Joseph Green was the Division Manager of that store.

In January, 2009, Ara withdrew both MCAD charges so that she could bring an action in court.  On April 21, 2009, MCAD issued to Ara a Dismissal and Notification of Rights, i.e. a right-to-sue letter.  On June 7, 2009, Ara resigned from her employment with the defendant.

## II. <u>Procedural History</u>

Ara filed her complaint in the Massachusetts Superior Court Department for Suffolk County on May 16, 2009.  The case was

removed by the defendant to federal court in June, 2009. On January 20, 2010, Ara amended her complaint to add a constructive discharge claim. After discovery, Tedeschi filed a motion for partial summary judgment on the constructive discharge claim (Count III) only which the plaintiff opposes.

**III. Motion for Partial Summary Judgment**

**A. Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden

shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

**B. Application**

Ara brings a claim for constructive discharge, alleging that she was forced to resign in June, 2009, for the following reasons: 1) a reduction in her hours, 2) a lack of pay increases, 3) a bad performance review, 4) a transfer to a different store and 5) the monitoring of her conduct on the company's video surveillance system by her supervisor, Joe Green, who also pressured her to quit. Tedeschi maintains that Ara's constructive discharge claim should be dismissed because she has failed to exhaust her administrative remedies or produce any evidence of constructive discharge.

**1. Failure to Exhaust Administrative Remedies**

The Court has jurisdiction over Chapter 151B and Title VII claims only if a plaintiff has previously filed the claim with an

administrative agency, such as the MCAD or Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-5(e)(1); Mass. Gen. Laws ch. 151B, § 5; Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005); Everett v. 357 Corp., 904 N.E. 2d 733, 746-47 (Mass. 2009). Here, Ara filed two complaints with the MCAD but neither included a claim for constructive discharge. Nevertheless, the scope of a civil suit is not necessarily limited to the allegations in the administrative complaint. Pursuant to the "scope of the investigation" rule, new claims may be raised in the civil suit so long as they are "based on the acts of discrimination that the MCAD investigation could reasonably be expected to uncover." Everett, 904 N.E. 2d at 748.

Tedeschi argues that the constructive discharge claim is not within the scope of the MCAD investigation into her retaliation and discrimination claims. Indeed, there are circumstances in which courts have held that a constructive discharge claim was not within the scope of a plaintiff's administrative discrimination or retaliation complaint. See, e.g., Herron v. DaimlerChrysler Corp., 388 F.3d 293, 303 n.2 (7th Cir. 2004) (holding that a four month delay between the plaintiff's EEOC complaint alleging racial discrimination and retaliation and his decision to resign was "inconsistent with notice of constructive discharge."); Casella v. MBNA Mktg. Sys. Inc., Civ. No. 8-176-B-W, 2009 WL 1621411, at *24-26 (D. Me. June 9, 2009)

(magistrate judge finding that plaintiff's constructive discharge claim could not reasonably be expected to grow out of her claim that she was not promoted because of her sex).

Nonetheless, in Clockedile v. New Hampshire Department of Corrections, the First Circuit Court of Appeals carved out an exception to the "scope of the investigation" rule for situations similar to Ara's. 245 F.3d 1, 6 (1st Cir. 2001). The Court held that a retaliation claim can be brought in a civil suit even if it was not within the scope of the administrative complaint

> so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency– e.g., the retaliation is for filing the agency complaint itself.

Id. The Court overruled an earlier holding to the contrary in light of the EEOC's amicus curiae brief stating that it is "likely" that the retaliation suffered by the plaintiff would have been discovered by the EEOC investigation into her sexual harassment claim. Id. at 4 (overruling Johnson v. Gen. Elec., 840 F.2d 132, 139 (1st Cir. 1988)).

The First Circuit cautioned, however, that it was not establishing a rule for non-retaliation claims or

> claims based on additional acts of discrimination or alternative theories that were never presented to the agency.

Id. Ara alleges that she was forced to resign due to retaliation for her MCAD complaints. The Court surmises that this is the kind of retaliation case to which the First Circuit was referring

in Clockedile.  See id.; Montalvo-Padilla v. Univ. of P.R., 492 F. Supp. 2d 36, 42-43 (D. P.R. 2007).  As such, the Court applies the Clockedile exception in this case.

The resultant question is, therefore, whether Ara's constructive discharge claim is "reasonably related to and grows out of the discrimination complained of to the agency". Clockedile, 245 F.3d at 6.  Ara filed her second MCAD complaint in December, 2007 and resigned in June, 2009.  That 18-month hiatus arguably makes Ara's claim of constructive discharge too attenuated from her original retaliation claim to be reasonably related.  See Herron, 388 F.3d at 303 n.2; Owens v. West, 182 F. Supp. 2d 180, 194 (D. Mass. 2001).

Although it is a close call, the Court finds that Ara's constructive discharge claim is reasonably related to her prior complaints because 1) Ara resigned only two months after the MCAD closed its investigation and issued her a right-to-sue letter and 2) the constructive discharge claim arises out of the same alleged pattern of conduct as Ara's two MCAD complaints.  Ara's case is distinguishable, therefore, from cases in which there was an extensive delay between the termination of the agency investigation and the lawsuit with no hint of retaliation in the meantime.  See Owens, 182 F. Supp. 2d at 194.  Thus, the Court finds that Ara has exhausted her administrative remedies with respect to her constructive discharge claim.

## 2. Evidence of Constructive Discharge

Tedeschi also maintains that the plaintiff has presented no evidence from which a jury could find that she was constructively discharged. In order to prevail on a claim for constructive discharge, a plaintiff must prove that she was subjected to discriminatory treatment or harassment that was "so severe and oppressive" that staying on the job while seeking redress would be intolerable. Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 45 (1st Cir. 2003); see also Meuser v. Fed. Express Corp., 564 F.3d 507, 522 (1st Cir. 2009) (stating that, for a resignation to be considered a constructive discharge, it "effectively must be void of choice or free will"). Courts look at a number of factors, including

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Lee-Crespo, 354 F.3d at 46. The plaintiff must prove that she suffered more than "the ordinary slings and arrows that workers routinely encounter in a hard, cold world." Id. at 45. Finally, a plaintiff must also show that she resigned within a reasonable time after experiencing the discrimination or retaliation. Landrau-Romeo v. Banco Popular De P.R., 212 F.3d 607, 613 (1st Cir. 2000).

The Court agrees with the defendant that there is no

evidence here of constructive discharge. First, Ara has provided no evidence that she suffered unusual or intolerable working conditions at Store 29 after she filed the December, 2007 MCAD complaint. She testified that she saw her Division Manager at Store 29, Joe Green, doing video surveillance of employees three to five times but she did not testify that she was the one being video-taped. Moreover, in her deposition, Ara could not give any specific dates for such surveillance or describe her encounters with Green. She alleges that Green was "mean" to her but could not give one example of a "nasty" thing that Green said to her. She said that Green would yell at her and not the other employees but could not elaborate on the nature or content of that verbal encounter. Ara also denied that Green used any derogatory words or reference to her race, national origin or religion.

With respect to her former Store and Division Managers, Aronson and Greenwood, Ara admitted in her deposition that she had no contact with them after she filed her first MCAD complaint in August, 2007, and was transferred to a different store.

Second, Ara has failed to offer any proof that her hours were reduced after December, 2007. In fact, she testified that she worked between 20 and 30 hours per week during the last 18 months of her employment and the payroll records show that. In mid-March of 2009, her hours were reduced to between 15 and 17 hours per week and in May and June of that year, to below ten

hours per week. Even assuming that her hours were cut over her objection, however, Ara has provided no explanation from which a reasonable juror could infer that the reduction in hours was in retaliation for a MCAD complaint filed 14 or 18 months earlier. Moreover, as the defendant points out, Ara opened her own convenience store in March, 2009, three months before her resignation from Tedeschi and at the same time her hours were reduced (although Ara denies that she resigned in order to work at her own store).

Finally, during her final 18 months of employment, Ara never reported any unfair treatment to her superiors. Thus, even viewing the record in the light most favorable to the plaintiff, the Court finds that there is no evidence from which a jury could find severe and intolerable working conditions. See Lee-Crespo, 354 F.3d at 45-46 (finding that a supervisor who unprofessionally managed her employees did not amount to severe and pervasive harassment); Ahern v. Shinseki, No. 05-117-ML, 2009 WL 1615402, at *8 (D.R.I. June 9, 2009) (finding that having a bullying and condescending supervisor did not constitute intolerable working conditions).

Ara also fails to produce evidence that she resigned within a reasonable time after the last instance of alleged retaliation and/or discrimination. In Smith v. Bath Iron Works Corp., the First Circuit dismissed a plaintiff's constructive discharge

claim because she resigned six months after the last alleged incident of sexual harassment. 943 F.2d 164, 167 (1st Cir. 1991); see also Foley v. Proctor & Gamble Distrib. Co., Civ. A. No. 01-11314-RWZ, 2003 WL 21696544, at *3 (D. Mass. July 21, 2003) (dismissing constructive discharge claim because plaintiff resigned four months after the last alleged discriminatory act). Here, the latest alleged act of retaliation occurred in November, 2008, seven months before Ara's resignation, when she received a mediocre performance review and no raise. Thus, the Court concludes that Ara did not resign as a result of retaliation.

**ORDER**

In accordance with the foregoing, the defendant's motion for partial summary judgment with respect to constructive discharge (Docket No. 23) is **ALLOWED** and Count III of Plaintiff's complaint is **DISMISSED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 21, 2011